MATTER OF S—

In SECTION 341 Proceedings

A–12030644

*Decided by Assistant Commissioner June 14, 1962*

**Loss of citizenship—Residence in country of former nationality—Voting in foreign election—Presumption of voluntariness.**

(1) Lengthy residence of naturalized United States citizen in the country in which her place of birth is situated must be voluntary in order to cause expatriation under section 404(b), Nationality Act of 1940, or section 352(a)(1), Immigration and Nationality Act. This applicant has established by uncontroverted evidence that her presence in Lithuania at least since 1942 has not been voluntarily continued on her part.

(2) Where the individual concerned was acting under duress and not as a free agent, voting in political elections in a foreign state did not cause loss of United States nationality under section 401(e) of the Nationality Act of 1940.

(3) Notwithstanding the conclusive presumption of voluntariness in section 349(b) of the Immigration and Nationality Act, the defense of duress remains available and effective to preserve nationality if the prolonged physical presence in the foreign state has been involuntary by reason of inability to obtain required official permission to depart.

## BEFORE THE ASSISTANT COMMISSIONER

DISCUSSION: The applicant is a 71-year-old married female, a a native of Lithuania, who was admitted to the United States on May 10, 1960, on a nonquota immigrant visa as the spouse of a citizen of the United States. On March 30, 1961, she submitted an application for a certificate of citizenship under section 341 of the Immigration and Nationality Act. The District Director recommends that the application be granted. The Regional Commissioner to whom the case was certified agrees with the District Director's conclusion, and this office concurs.

Applicant's claim to United States citizenship arises out of her marriage in Newark, New Jersey, to W—S— on April 23, 1913, and his naturalization in the Common Pleas Court of Hudson County, Jersey City, New Jersey, on October 3, 1921. The fact that she derived United States citizenship upon his naturalization is not contested, the only issue being with regard to whether sub-

711

sequent to such derivation she has lost her United States citizenship by residence in Lithuania or by voting in political elections in that country.

The applicant has testified that she went to Lithuania in August 1938 with her husband for a visit; that while there, because of illness on her part and inability to rent rooms, her husband purchased a small two-family dwelling in December 1938; that in 1939 he returned to Newark to the home which they had continued to own in the United States; that her health at that time and until about 1942 would not permit her to travel; and that she herself was not permitted to return to the United States until 1960.

Concerning her prolonged residence in Lithuania, the applicant has further testified that occupation of the country by Russian or German authorities during the war years made it impossible for her to leave; that during all her residence there she continued to live in the same house; that she wrote to her husband many times requesting his help in leaving Lithuania; that she received no letters from him until about 1956; and that it was not until 1960 that she could obtain permission to depart and documentation to return to the United States.

The record substantiates applicant's testimony regarding her inability to make an earlier return to the United States. It shows that her husband wrote to her many times, but received no answer, and that since 1940 several attempts were made through the State Department to bring her back to the United States. An approved petition for issuance of an immigrant visa granting her nonquota status as of December 4, 1940, was on file in the American Embassy in Moscow. Inquiry was also made of that Department in May 1946 by the applicant's daughter concerning the procedure to be followed in order that applicant might return to the United States. The applicant's husband further exhibited a letter from the State Department dated December 31, 1947, stating it had not been possible to contact her. She eventually succeeded in re-establishing contact with him, and in 1956 executed an application for registration a~ citizen of the United States through the Embassy at Moscow. The application was approved and the Embassy was authorized to issue a passport to her upon her application therefor, but no passport was issued as she was unable then and until 1960 to secure permission to depart.

Section 404(b) of the Nationality Act of 1940, prior to its repeal on December 24, 1952, and current section 352(a)(1) of the Immigration and Nationality Act provide for the loss of United States nationality by a naturalized citizen of the United States—that is, by a person who acquired United States nationality subsequent to birth—through three years' continuous residence in the country of

712

nativity or former nationality. The residence contemplated, however, is voluntary residence (*Matter of C—*, 2—889 (1947)). Inasmuch as the applicant has established that she derived citizenship through the naturalization of her husband and has injected the issue of voluntariness in connection with her lengthy residence in Lithuania, the burden is upon the Government to show that she voluntarily resided in Lithuania (*Nishikawa* v. *Dulles*, 356 U.S. 129 (1958)). The weight of the uncontroverted evidence of record is to the effect that her presence in Lithuania since at least 1942 has not been voluntarily continued on her part. On the contrary, it has been enforced by circumstances beyond her control, including inability to communicate with her family and the State Department and to secure an exit permit. A conclusion, therefore, that she has lost nationality under section 404(b) or 352(a)(1) cannot be sustained.

The applicant has further testified that she voted in elections in Lithuania approximately 10 times between February 1944 and February 1959. She alleges, however, that such voting was under duress and that if one did not vote "they put you in jail." A resume of the laws relating to voting in Lithuania, received from the Library of Congress, points out that these laws are patterned on Soviet electoral laws and that duty to vote is emphasized by threats in newspapers and statements of public officials.

Section 401(e) of the Nationality Act of 1940, prior to its repeal on December 24, 1952, provided for loss of United States nationality by voting in a political election in a foreign state. Again, the issue of voluntariness having been raised by the applicant in connection with her voting during the effective period of section 401(e), the burden is upon the Government to show that when she voted she was acting as a free agent, without force from outside pressures (*Matter of G—*, 8—317 (1959)). There is no such evidence of voluntariness, and consequently the record cannot sustain a conclusion that her voting prior to December 24, 1952, resulted in loss of nationality under section 401(e) of the Nationality Act of 1940.

Section 349(a)(5) of the Immigration and Nationality Act, which became effective on December 24, 1952, contains provisions identical to those of section 401(e). This later Act, however, contains an additional provision—section 349(b)—which raises a conclusive presumption that voting on or after December 24, 1952, has been performed voluntarily and without duress of any kind if the person involved is a national of the state in which the voting occurs and has been physically present in that state for a period or periods totaling 10 years immediately prior to voting. The applicant's nationality at the time of this subsequent voting and the length of her

713

physical presence in Lithuania are material, therefore, in considering the efficacy of the defense of duress which has been advanced and whether the conclusive presumption in section 349(b) operates against her. In this connection, the question of her status as a national of the foreign state where the voting occurred is not clear, but clarification thereof is not deemed necessary in view of the conclusion reached below that her presence in Lithuania did not constitute physical presence within the meaning of that section.

Section 349(b) introduces a new concept into the field of expatriation law. It removes from consideration by direct legislative action a defense hitherto firmly entrenched in the law, voluntariness in the performance of an expatriatory act having been traditionally essential to cause a loss of United States nationality. As such, the provisions of this section require a narrow interpretation and more than ever in its administration "the law should be construed as far as is reasonably possible in favor of the citizen" (*Nishikawa* v. *Dulles*, *supra*, and *Schneiderman* v. *United States*, 320 U.S. 118, 122). So construed, the section is regarded as effective to raise a conclusive presumption that the expatriatory act was voluntarily performed only if the physical presence in the foreign state was voluntary. It does not operate with that effect when, as in the instant case, the record establishes continuing unavailing efforts to depart from the foreign state and that the prolonged physical presence there is the result of official prevention of departure. When freedom of egress is shown to be so restricted, it is the view of the Service that physical presence within the meaning of section 349(b) does not accrue and that duress in the performance of an expatriatory act remains available as a defense.

In the instant case, the applicant has fully established the involuntary nature of her presence abroad. The defense of duress in connection with her voting on or after December 24, 1952, may, therefore, be given effect, and on the entire showing made a finding of expatriation under section 349(a)(5) cannot be sustained.

**ORDER:** It is ordered that the decision of the District Director and the Regional Commissioner, finding that the applicant derived citizenship through the naturalization of her husband on October 3, 1921, and that she has not subsequently been expatriated, be and hereby is approved.